IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JERMAINE FILES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 19-0742-WS-B |
| | ) |
| DEERFIELD MEDIA (MOBILE), INC., | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |

ORDER

This matter is before the Court on the defendants' motion to dismiss. (Doc. 22). The parties have filed briefs in support of their respective positions, (Docs. 22-1, 26, 27, 28), and the motion is ripe for resolution. After careful consideration, the Court concludes the motion is due to be denied.

BACKGROUND

According to the complaint, (Doc. 1), the defendants own and operate a local television station ("WPMI"). In early October 2017, the defendants broadcast a story that included the name of, and a photograph of, the plaintiff and another individual, accompanied by the statement, "they rape and pillage." The story also appeared on WPMI's website, where visitors posted hurtful and offensive comments about the plaintiff. The plaintiff is not in fact a rapist or a pillager. When the plaintiff became aware of the story, he and others on his behalf contacted the defendants and asked them to retract the story and publish a correction. The defendants did not do so, and the story continued to appear on WPMI's website throughout October 2017.

The complaint asserts three causes of action under Alabama law: (1) defamation *per se*; (2) negligence; and (3) wantonness. The defendants seek

dismissal of all claims pursuant to Rule 12(b)(6), with prejudice and without leave to amend.  (Doc. 22-1 at 7, 21).

## DISCUSSION

The defendants challenge the plausibility of certain allegations of the complaint.  (Doc. 22-1 at 12, 17, 19, 20).  To survive dismissal under Rule 12(b)(6), a complaint must first satisfy the pleading requirements of Rule 8(a)(2).  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "A pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief …."  Fed. R. Civ. P. 8(a)(2).  Pleading elements is necessary, but it is not enough to satisfy Rule 8(a)(2). The rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" satisfy that rule.  *Twombly*, 550 U.S. at 555.  There must in addition be a pleading of facts.  Though they need not be detailed, "[f]actual allegations must be enough to raise a right to relief above the speculative level ...."  *Id*.  That is, the complaint must allege "enough facts to state a claim for relief that is plausible on its face."  *Id*. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard … asks for more than a sheer possibility that the defendant has acted unlawfully," and "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (internal quotes omitted).  A complaint lacking "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" will not "survive a motion to dismiss."  *Id*.  But so long as the plausibility standard is met, the complaint "may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotes omitted).

### A.  Sources of Tortious Statements.

As noted, the complaint identifies three sources of defamatory or otherwise tortious statements:  a television broadcast, a website posting, and comments left by third parties on the website.  The defendants first argue that no such third-party comments were made on the website and that the allegedly defamatory statement was not made during a broadcast.  (Doc. 22-1 at 13-14).

Neither videos of the broadcast nor screen shots of the website are attached to the complaint.  The defendants assume these media can nevertheless be considered on motion to dismiss "because they are referenced in the Complaint." (Doc. 22-1 at 13).  In the Eleventh Circuit, "a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is:  (1) central to the plaintiff's claim; and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (emphasis added). "'Undisputed' in this context means that the authenticity of the document is not challenged." *Id*.  By its terms, *Horsley* extends only to "documents," and the defendants have failed to demonstrate that the same principle extends equally to social media.

Assuming that it does so, the defendants still are not entitled to dismissal on this ground.  Neither of the submitted television videos mention the plaintiff or display his likeness, but the defendants have not shown that no earlier version of the story was broadcast or that any such broadcast likewise omitted the plaintiff. The website screen shots are similarly inconclusive as to third-party comments; the earliest of them dates from October 27, some 17 days after the initial posting. The defendants have not established that the October 27 posting is unchanged from October 10; on the contrary, they concede that the submitted October 27 posting is only "a" pre-correction version.  (Doc. 22-1 at 9 n.5).  Nor have they explained how the absence of comments on a specific post could negate such comments elsewhere on "the website, mynbc15.com," as alleged in the complaint. (Doc. 1 at 3).

In a two-sentence argument, the defendants propose that any cause of action based on third-party comments on the WPMI website is barred by the Communications Decency Act ("CDA"). (Doc. 22-1 at 13-14). The argument is not implausible, but merely citing a single sentence of generalized dicta from the Eleventh Circuit shifts no burden to the Court to investigate the statute and case law thereunder in an effort to determine its scope and whether this particular case satisfies all its definitional and other requirements.

In their reply brief, the defendants change tack, now arguing that the Court may take judicial notice that the WPMI website did not allow comments and that the broadcasts did not mention the plaintiff or display his likeness. (Doc. 27 at 1). "District courts, including this one, ordinarily do not consider arguments raised for the first time on reply." *Clarke v. Tannin, Inc.*, 301 F. Supp. 3d 1150, 1173 (S.D. Ala. 2018). The defendants offer, and the Court discerns, no reason to depart from the general rule. In any event, and for reasons stated above, the defendants have failed to show that the asserted facts "can be accurately and readily determined from [the] sources" they have presented. Fed. R. Evid. 201(b)(2).[1]

### B. Fair Report Privilege.

Alabama law bestows a conditional privilege upon "[t]he publication of a fair and impartial report of … any investigation made by any legislative committee, or other public body or officer." Ala. Code § 13A-11-161. The defendants argue that the privilege applies because the plaintiff's name and photograph, and the "rape and pillage" language, came from a tweet created by the Mobile County Sheriff's Office ("MCSO") that the defendants "embedded" in the

---

[1] The defendants also insist that the plaintiff's failure to respond to their arguments means they win by default. (Doc. 27 at 2). The Court has rejected this proposition, *Gailes v. Marengo County Sheriff's Department*, 916 F. Supp. 2d 1238, 1241-44 (S.D. Ala. 2013), and the defendants (who do not acknowledge *Gailes*) offer no reason the Court should reconsider that ruling.

4

website post.  According to the defendants, MCSO was officially investigating a home invasion and rape, and an embedded tweet from MCSO is necessarily a "fair and impartial report" of that investigation.  (Doc. 22-1 at 14-17).

The MCSO tweet is not mentioned in the complaint, and the defendants do not suggest that the Court may consider it pursuant to the *Horsley* rule.  Instead, they argue that the Court may take judicial notice of the tweet and may do so even though the tweet was deleted by MCSO.  (Doc. 22-1 at 9 & n.4).  The defendants cite two cases (both arising outside the Eleventh Circuit) taking judicial notice of tweets under Federal Rule of Evidence 201(b)(2), but their only authority for the proposition that deleted tweets (if archived) can be judicially noticed does not support the proposition.[2]  In any event, the defendants have not asserted or demonstrated that the tweet has been archived.[3]  The taking of judicial notice is a "highly limited process," and the Court has "wide discretion" whether to take judicial notice.  *Lodge v. Kondaur Capital Corp.*, 750 F.3d 1263, 1273 (11th Cir. 2014) (internal quotes omitted).  Given the defendants' failure to show that evidence of a deleted, non-archived tweet comes "from sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b)(2), the Court declines to take judicial notice of the purported tweet.

Even were the Court to take judicial notice of the tweet, the defendants' motion would fail.  Assuming without deciding that the fair report privilege arose, the privilege is only "conditional."  *Wilson v. Birmingham Post Co.*, 482 So. 2d 1209, 1212, 1213 (Ala. 1986).  The privilege is lost if publication was with "actual malice."  Ala. Code § 13A-11-161.  "Actual malice" within the statute can be shown by, *inter alia*, "the violence of the defendant's language, the mode and

---

[2] The defendants' case involved a *Daubert* challenge to a witness allegedly lacking credentials as a website archiving expert; it does not discuss judicial notice.

[3] The defendants offer what they say is a screen shot of the original, October 10 tweet, (Doc. 22-1 at 9), but they do not explain where it came from or how the Court can take judicial notice based only on their say so.

extent of the publication, and the like." *Wilson*, 482 So. 2d at 1213.[4]  The defendants assert that the complaint fails plausibly to allege actual malice, (Doc. 22-1 at 12, 17-19), but the Court is unprepared to draw that conclusion based on the defendants' argument.

The defendants do not deny that calling someone a rapist and a pillager (as the complaint alleges) is sufficiently violent language from which to infer actual malice; instead, they state only that this is MCSO's language, not theirs.  (Doc. 22-1 at 17-18; Doc. 27 at 5).  And so it may have been, initially.  But the defendants offer no legal authority or analysis to demonstrate that a defendant may with impunity parrot the violent language of a source without even potentially making it "the defendant's language" for purposes of actual malice within the statute.  Absent such support, the defendants have failed to show as a matter of law that the complaint fails plausibly to allege actual malice.

As to the mode and extent of publication, the defendants state only that it was "finite."  (Doc. 22-1 at 18).  Again, no analysis or authority is provided to demonstrate the legally relevant parameters of this indicium of actual malice, without which the defendants cannot show that the complaint falls short.  Nor have the defendants addressed the presence or absence of any other indicia falling under the rubric of "and the like."

The fair report privilege is also lost if the defendant fails to honor a request for certain corrective action.  Ala. Code § 13A-11-161.  Without parsing the language of this provision, the defendants argue they satisfied it, by editing the post to remove the reference to the plaintiff and to state that the story had been updated to remove an embedded tweet incorrectly naming one of the suspects. (Doc. 22-1 at 9; Doc. 27 at 5).

---

[4] It may also be shown by "the recklessness of the publication and prior information regarding its falsity." *Wiggins v. Mallard*, 905 So. 2d 776, 788 (Ala. 2004) (internal quotes omitted).

Assuming without deciding that the Court may properly consider the amended post on motion to dismiss, the defendants' argument nevertheless fails. The complaint alleges the challenged statement remained on the WPMI website "throughout October 2017." (Doc. 1 at 3-4). The defendants acknowledge that the plaintiff alleges the passage of 17 days between his first request for retraction and correction and their responsive action, but they say this delay presents no obstacle to dismissal because "the statute includes no deadline for correction." (Doc. 27 at 5). Once again, the defendants offer no legal authority to support the rather startling proposition that a defendant may, without violating Section 13A-11-161, refuse retraction and correction indefinitely – despite request and despite knowledge of the falsity[5] – so long as it ultimately honors the request. The defendants offer the Court no principled basis for so construing the statute, and the Court will not on this scant argument do so.[6]

### C. Constitutional Malice.

In certain situations, the Constitution requires a defamation plaintiff to prove publication of the defamatory statement "'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 327-38 (1974) (quoting *New York Times v. Sullivan*, 376 U.S. 254, 279 (1964)). The Supreme Court terms this "actual malice," *id.*, but the

---

[5] Independent of the plaintiff's protestations, the defendants knew the plaintiff had been misidentified no later than its 5:00 p.m. broadcast on October 10, when it identified the three suspects, none of which was the plaintiff. They may have known as early as 12:17 that afternoon, when, according to the defendants, MCSO corrected its tweet to substitute the actual suspect for the plaintiff. (Doc. 22-1 at 10).

[6] In a notice of supplemental authority filed after this opinion was finalized, the defendants argue that *Birmingham Broadcasting (WVTM-TV) LLC v. Hill*, 2020 WL 964285 (Ala. 2020), supports their position. (Doc. 28 at 2). *Hill*, however, neither addresses the defendant's "no deadline" argument nor offers any tangential support for it. On the contrary, the defendant in *Hill* published a correction at its first opportunity (its first segment of the weekly program at issue to run after warrants against the plaintiff were recalled). *Id.* at *2-3.

7

defendants – presumably to distinguish it from the common-law "actual malice" required by Section 13A-11-161 – term it "constitutional malice." The defendants argue that constitutional malice is always required when the plaintiff is a private individual and the subject of the statement is of public concern, requirements they say are met here. Because the complaint does not allege they made the challenged statement with knowledge it was false or with reckless disregard of its truth or falsity, the defendants conclude the defamation claim must be dismissed. (Doc. 22-1 at 19-20).

The defendants, relying on the materials addressed in Part A, note that the subject of the challenged statement was the identity of two suspects, still at large, in a home invasion and rape. This, they say, is surely a matter of public concern for purposes of the constitutional rule. The Court assumes for present purposes that this is correct, and the Court agrees the complaint fails to allege constitutional malice as defined above.[7] The defendants, however, have not demonstrated that the failure to allege constitutional malice is fatal to the plaintiff's claim as opposed to merely limiting the range of damages he may recover.

> We hold that, so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual. … [W]e endorse this approach in recognition of the strong and legitimate state interest in compensating private individuals for injury to reputation. But this countervailing state interest extends no further than compensation for actual injury. For the reasons stated below, we hold that the States may not permit recovery of presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth.

*Gertz*, 418 U.S. at 347-48. *Gertz* involved a private figure and a matter of public concern. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 775 (1986); *Dun*

---

[7] The complaint alleges the defendants recklessly failed to remove the false statement and recklessly disregarded the plaintiff's rights, (Doc. 1 at 5), but it does not allege the defendants acted with reckless disregard of the truth or falsity of the statement or that they knew the statement to be false.

*& Bradstreet, Inc. v. Greenmoss Builders, Inc*., 472 U.S. 749, 751, 756 (1985) (plurality opinion).  It appears from *Gertz* that the Constitution permits a private individual allegedly defamed by a statement on a matter of public concern to recover actual damages without any showing of constitutional malice; constitutional malice is required in such cases only to the extent the plaintiff seeks to recover presumed damages and/or punitive damages.

The *Gertz* Court left it to the states to establish the degree of fault (above zero) required to support an award of actual damages to a private individual defamed by a statement on a matter of public concern.  Theoretically, then, Alabama could establish constitutional malice as necessary to support even an award of actual damages in such a case.  The defendants, however, have failed to establish that Alabama has done so.

The only case the defendants cite is *Cottrell v. National Collegiate Athletic Association*, 975 So. 2d 306 (Ala. 2007).  The Alabama Supreme Court there stated that, "[i]f the matter is of public concern, then the defamed private individual must prove by clear and convincing evidence that the statements were made with actual malice …." *Id*. at 344; *see also id*. at 345 ("Because [the challenged statement] involved a matter of public concern, [the plaintiff] must present clear and convincing evidence of actual malice to satisfy his burden of proof for his defamation claim based on that statement to be submitted to the jury.").  The quoted excerpts, standing alone, might seem to support the defendants' position, but they are not the only pronouncements before the Court.

The *Cottrell* Court, in setting forth the law applicable to the case, cited several cases (including *Gertz*) for the proposition that a public official or public figure must prove constitutional malice.  In contrast, the Court stated in the next sentence that, "[i]f it is determined that the plaintiff is a private figure, then the plaintiff has the burden of establishing by a preponderance of the evidence that the defendant negligently published the defamatory statement." 975 So. 2d at 333.  This articulation of the rule, which appears to contradict the excerpts on which the

9

defendants rely, was attributed to *Mead Corp. v. Hicks*, 448 So. 2d 308 (Ala. 1984).

The *Mead* Court (unlike *Cottrell*) analyzed the effect of *Gertz* and concluded that "[i]t is, then, left up to the individual states to adopt a standard of conduct with regard to allegedly defamatory statements by private figures which incorporates the 'fault' concept contained in *Gertz*." 448 So. 2d at 312. The *Mead* Court then selected negligence as that standard. *Id*. ("Thus, defendants who made false defamatory statements about private figures may be held liable if their conduct created an unreasonable risk of harm to the plaintiff."); *accord Nelson v. Lapeyrouse Grain Corp.*, 534 So. 2d 1085, 1091 n.2 (Ala. 1988) ("Adhering to *Gertz* …, this Court [in *Mead*] adopted a negligence standard ….").

The *Cottrell* opinion is over 50 pages long and is not easy reading, but several other portions of it appear also to be in tension with the excerpts on which the defendants rely. For example, the trial court treated the plaintiff as a public figure throughout the trial but, after the close of the evidence, he determined the plaintiff was a private figure. The defendant sought a new trial on the grounds he had constructed his presentation around the absence of actual (constitutional) malice (since that is required of a public figure) rather than the absence of negligence (the standard for private individuals with respect to actual damages), such that the subsequent alteration of the plaintiff's status prejudiced the defense. 975 So. 2d at 330-31. The Alabama Supreme Court agreed that the defendant was prejudiced by the trial court's reversal of position and was entitled to a new trial, *id*. at 352, a ruling that would seem unlikely if constitutional malice were required in the context of private individuals seeking actual damages.

As another example, the defendant argued he should receive not just a new trial but judgment as a matter of law in his favor, on the grounds the plaintiff did not prove constitutional malice. The *Cottrell* Court responded that, because the plaintiff was a private person, he "did not have to present evidence of actual malice to establish a prima face [sic] case of defamation" and that, to the extent

the defendant argued the evidence would not support punitive damages, the plaintiff "presented sufficient evidence to create a jury question as to whether [the defendant] made the statements with actual malice." 975 So. 2d at 352. The *Cottrell* Court here applied exactly the standard established by *Mead*.

The two sentences on which the defendants rely thus appear to be at odds, not only with other Alabama Supreme Court cases, but with other portions of *Cottrell* itself. Nor did the *Cottrell* Court cite any authority in support of the statements the defendants seize upon.[8] Nor did it purport to overrule *Mead* and *Nelson*. Because *Cottrell* elsewhere recognized that a private individual need prove constitutional malice only to recover punitive damages, 575 So. 2d at 352, the defendants' favored excerpts are perhaps best read as implicitly carrying the same limitation. Even if the defendants' excerpts are to be read as they propose, they could constitute a misreading of constitutional law (which *Cottrell* cannot alter) at least as easily as a pronouncement of Alabama law.

The Court need not reach any definitive conclusion regarding the state of Alabama law as permitted by *Gertz*. It is sufficient for present purposes to conclude that the defendants' mere quotation to *Cottrell* – which is all they offer – is inadequate to establish as a matter of law that Alabama requires a private plaintiff to prove constitutional malice in order to recover actual damages.

The range of recoverable actual damages may be established by the state, but "the more customary types … include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." *Gertz*, 418 U.S. at 350. The complaint expressly seeks exactly these elements of

---

[8] The Court quoted *Ex parte Rudder*, 507 So. 2d 411 (Ala. 1987), for the proposition that, when the plaintiff is a private individual, the Court must determine whether the challenged statement involved a matter of public concern. 975 So. 2d at 344. This is a correct reading of *Rudder*, 507 So. 2d at 416, but it does not suggest that a private individual must prove constitutional malice in order to recover actual damages. The *Cottrell* Court's only other citation was to *Nelson*, and that only for the definition of constitutional malice. 975 So. 2d at 344.

damage.  (Doc. 1 at 5).  Because the complaint seeks actual damages, and because the defendants have not shown that constitutional malice is a prerequisite to their recovery, the defamation claim is not legally deficient and may not be dismissed.[9]

### D.  Communications Decency Act.

In a single sentence of argument, the defendants posit that the plaintiff's claims are barred by the CDA.  (Doc. 22-1 at 14).[10]  The defendants' position is insufficiently developed to allow assessment and thus fails to support dismissal.

### E.  Negligence/Wantonness.

The defendants' motion as to these claims expressly depends on the success of their motion as to the defamation claim.  (Doc. 22-1 at 7, 18-19, 20-21).  Because the motion fails as to the latter claim, it likewise fails with respect to the former.

### CONCLUSION

For the reasons set forth above, the defendants' motion to dismiss is **denied**.

DONE and ORDERED this 10th day of March, 2020.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[9] The complaint also seeks punitive damages and may seek presumed damages as well.  (Doc. 1 at 5-6).  The defendants, however, do not seek limitation of the types of damages the plaintiff may recover; instead, their only request for relief is for dismissal of the entire defamation claim, and to that they are not entitled.

[10] As the defendants repeatedly state that they raise "two" arguments for dismissal (those addressed in Parts B and C above), (Doc. 22-1 at 7; Doc. 27 at 1, 5), it is not clear that they seriously propose dismissal under the CDA.